# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**KEVIN EASTERLING,**

               **Plaintiff,**

**-vs-**                                  **Case No.  6:05-cv-855-Orl-22GJK**

**THE CITY OF ORLANDO,**

               **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S ATTORNEYS FRANK T. ALLEN AND THE ALLEN FIRM PA'S MOTION TO TAX FEES, COSTS AND INTERESTS AND MEMORANDUM OF LAW IN SUPPORT (Doc. No. 93)** |
| **FILED:** | **December 19, 2007** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

> | MOTION: | PLAINTIFF'S ATTORNEY MICHAEL LAFAY AND THE LAW FIRM OF NEJAME, LAFAY, JANCHA, VARA, BARKER & JOSHI'S MOTION TO TAX FEES, COSTS AND INTERESTS AND MEMORANDUM OF LAW IN SUPPORT (Doc. No. 95) |
> |---|---|
> | FILED: | December 21, 2007 |
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

Plaintiff Kevin Easterling, seeks attorneys' fees and costs as the prevailing party in this claim for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff seeks an award of attorneys' fees for Frank T. Allen and The Allen Firm, P.A. ("Allen") (Doc. No. 93) and Michael LaFay, Esq. of the law firm of Nejame, LaFay, Jancha, Vara, Barker & Joshi, P.A. ("LaFay") (Doc. No. 95) (herein referred to individually as either the "Allen Motion" or "LaFay Motion" and collectively as the "Motions").

## I.   BACKGROUND

On June 9, 2005, Plaintiff Kevin Easterling (herein "Plaintiff" or "Easterling"), a former employee of Defendant the City of Sanford (herein "Defendant" or "City"), filed this action seeking to hold Defendant liable for sexual harassment, hostile work environment, and retaliation under Title VII. Doc. No. 1. The Joint Final Pretrial Statement prior to amendment indicates that Plaintiff was seeking compensatory damages of $250,000.00. Doc. No. 33 at 7.

There are five companion cases ("Companion Cases") including this case.[1] On May 31, 2005, the Court *sua sponte* severed the Companion Cases. *Floeter*, Doc. No. 17. On December

---

[1] The other four cases are *Shawn Hayden v. The City of Orlando*, Case No. 6:05-cv-853-Orl-22GJK; *Matthew Floeter v. The City of Orlando*, Case No. 6:05-cv-400-Orl-22GJK; *Alex Faberlle v. The City of Orlando*, Case No. 6:05-cv-852-Orl-22UAM; and *Anthony Moreschi v. The City of Orlando*, Case No. 6:05-cv-854-Orl-22UAM. At trial, the jury did not rule in favor of *Faberlle*. The *Moreschi* case settled.

11, 2006, Defendant moved for summary judgment ("Summary Judgment Motion") contending the following:

> [Easterling] was not subject to unwelcome sexual harassment that was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive work environment;
>
> Easterling fails to show that the City had or should have had knowledge of the alleged sexual harassment at or about the time it allegedly occurred, and failed to take proper action once it acquired such knowledge; and
>
> [the City] did not take any materially adverse employment action against [Hayden] in retaliation for his claims of sexual harassment.

Doc. No. 25 at 1-2. Plaintiff filed a memorandum in opposition refuting each of the Defendant's contentions. Doc. No. 30.

On March 14, 2007, the Honorable Anne C. Conway granted in part and denied in part the Defendant's Summary Judgment Motion. Doc. No. 38. The Summary Judgment Motion was granted insofar as it sought summary judgment on Plaintiff's sexual harassment claim, and it was denied insofar as it sought summary judgment on Plaintiff's retaliation claim. *Id.* at 32.

The case proceeded to trial before a jury. On July 18, 2007, Defendant filed Defendant's Motion for Directed Verdict. Doc. No. 67. On July 19, 2007, the jury entered a verdict for Plaintiff in the amount of $7,500.00. Doc. No. 69. On September 12, 2007, Plaintiff filed a Motion for Entry of Final Judgment requesting that the Court enter an order for final judgment in favor of Plaintiff in the amount of $7,500.00. Doc. No. 80. On October 4, 2007, the Judge Conway granted Plaintiff's motion for final judgment and judgment was entered in favor of Plaintiff and against the Defendant for $7,500.00. Doc. Nos. 82, 83. On December 19 and 21, 2007, Plaintiff filed the present Motions. Doc. Nos. 93, 95. Plaintiff argues he is the prevailing party in the action and should be awarded his attorneys' fees. *Id.*

In the Allen Motion, Plaintiff requests that the Court enter an Order taxing attorney fees of $74,550.00, which includes the attorneys' fees incurred in pursuing the sexual harassment claim or, in the alternative, $67,550.00, which excludes the fees incurred in pursuing the sexual harassment claim, and costs of $1,800.17. Doc. No. 93 at 16. In the LaFay Motion, Plaintiff requests that the Court enter an Order taxing attorney fees of $65,555.00, which includes the attorneys' fees incurred in pursuing the sexual harassment claim or, in the alternative, $58,555.00, which excludes the fees incurred in pursuing the sexual harassment claim, and costs of $3,160.66. Doc. No. 95 at 12. Plaintiff states that the amounts were arrived at by applying the lodestar formula, calculated by multiplying the hours Plaintiff's counsel reasonably spent on litigation by a reasonable hourly rate.[2] Doc. No. 93 at 6; Doc. No. 95 at 5. Plaintiff requests that the Court consider a multiplier of 1.2 to 1.5, or alternatively an enhancement of 25% to 33%, as to the attorneys' fees award. Doc. No. 93 at 16; Doc. No. 95 at 12. Plaintiff also states that he is entitled to interest on the award of attorneys' fees.

Allen states that he has litigated civil rights cases for approximately thirteen (13) years. Doc. No. 93-3. LaFay states that he has been a trial attorney for twenty-two years (22), but he does not specify his experience in civil rights cases. Doc. No. 95-5. LaFay states he has been a partner at the law firm of Najame, LaFay, Jancha, Vara, Barker & Joshi, P.A. since 2002. *Id.*

On January 4, 2008, Defendant responded in opposition ("Opposition") to the Motions. Doc. No. 99. Citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), Defendant states there are

---

[2] Allen states he generated 213.0 hours in *Easterling* multiplied by a $350.00 hourly rate. *See* Doc. No. 93-3. Allen claims to have generated 193.0 hours excluding the sexual harassment claim. Doc. No. 93 at 6. LaFay states he expended 187.3 hours, including the sexual harassment claim, and 167.3, excluding the sexual harassment claim, multiplied by a $350.00 hourly rate. Doc. No. 95 at 5.

two questions that need to be addressed to determine whether the Plaintiff qualifies as a prevailing party even though he only prevailed on one of his claims:

> Did the Plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?
>
> Did the Plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

Doc. No. 99 at 5; *Hensley*, 461 U.S. at 434. Defendant states that the answer to the first question is "yes" and the answer to the second question is "no." *Id.* at 5-6. Defendant argues that because Plaintiff did not prevail on his sexual harassment claim, any hours expended on this claim should be deducted from Plaintiff's fee award. *Id.* Defendant then states: "Even if [this Court] finds that Plaintiff's unsuccessful sexual harassment claim and his mildly successful retaliation claim are related, this Court may still disallow certain fees based on Plaintiff's 'limited success' as a whole." *Id.* (*citing Avila v. Coca-Cola Co.*, 849 F.2d 511, 514 (11th Cir. 1988); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1579 (11th Cir. 1987)). Thus, Defendant argues that the Court should decrease Plaintiff's fees because Plaintiff's success on the retaliation claim was a "different nature" and "considerably less than" the relief Plaintiff could have achieved with a successful sexual harassment claim. Doc. No. 99 at 6.

Defendant maintains that Plaintiff's attorneys' fees should be reduced by fifty percent, reasoning that "discovery revealed that most of Plaintiff's allegations and alleged damages were tied to his sexual harassment claim." *Id.* at 6-7, n. 3. Defendant also states that the hours worked by Plaintiff's counsel should be reduced to either twenty or twenty-five percent (20 or 25%) (depending on whether all five of the Companion Cases or only four were pending during the relevant time) because of overlap between the work in the instant case and the Companion

Cases. *Id.* at 7-11. Finally, Defendant states that the Court should apply a thirty-percent deduction to the total amount of hours performed due to the overlap between Allen and LaFay. *Id.* at 11, 14. Defendants conclude that Allen is entitled to fees for a maximum of 94.2 hours, and LaFay is entitled to fees for a maximum of 87.8 hours. Doc. No. 99 at 11, 14.

Defendant argues the $350.00 hourly rate charged by Allen and LaFay is not reasonable. Attached to Defendant's Opposition is the affidavit of John M. Finnigan, Esq. ("Finnigan"), wherein he testifies that the $350.00 hourly rate "is on the very high end of the range of fair, reasonable and customary rates charged by more experienced and more qualified employment attorneys . . ." and $250.00 to $275.00 is a reasonable rate per hour.[3] Doc. No. 99-2, ¶¶ 11, 12. Finnigan states in his affidavit that he has been a member of the Florida bar since 1993, and he specializes in employment and labor law. *Id.*, ¶ 1. Defendant requests that Allen's rate be reduced to $234.00 per hour and LaFay's be reduced to $225.50 per hour. Doc. No. 99 at 17. Defendant derives these hourly rates by analyzing the twelve factors delineated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[4]

Defendant concludes that Allen should be awarded $22,042.80 in attorneys' fees and LaFay should be awarded $19,755.00 in attorneys' fees. Doc. No. 99 at 18. Defendant also contends that Plaintiff did not obtain "exceptional result," nor was the representation "superior," to warrant the application of an enhancement fee. *See Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). Citing *Winn-Dixie Stores, Inc. v. Reddick*, 954 So.2d 723 (Fla. 1st DCA 2007), Defendant maintains that the Eleventh Circuit does not permit multipliers under

---

[3] Finnigan has been practicing law for fourteen years and charges an hourly rate of $275.00. Doc. No. 99-2.
[4] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to September 30, 1981.

Title VII. *Reddick*, 954 So.2d at 727 (*citing McKenzie v. Cooper, Levings, & Pastko, Inc.*, 990 F.2d 1183, 186 (11th Cir. 1993)).

On February 5, 2008, this Court allowed the Plaintiff to file a reply brief ("Reply") to Defendant's Opposition as it related to the fees requested by Allen, and the Defendant to file a sur-reply ("Sur-Reply") to Plaintiff's Reply. Doc. No. 106. On February 11, 2008, Plaintiff filed his Reply brief. Doc. No. 107. Plaintiff maintains that he conferred with opposing counsel and informed opposing counsel that "the time entered on the timesheets attached to Plaintiff's [Motions] was already allocated, and divided among the five [Companion Cases] where that activity was performed for all five [Companion Cases]." *Id.* at 1. For instance, Plaintiff states:

> A) The 13.05 hrs Defense Counsel seeks to reduce to 1.4 hrs for the time spend [sic] prior to the severance of the claims is time specifically allocated for Easterling's case, and any shared time was already properly divided.
>
> B) The 24.4 hrs Defense Counsel seeks to reduce to 2.5 hrs for time spent on mediation related activities, settlement related activities and discovery related activities after severance but before dismissal of sexual harassment claim is the divided amount for Easterling's case after the time was already properly and adequately divided and allocated between the five (5) plaintiffs, or otherwise specific to Easterling's case . . .

*Id.* at 2. Furthermore, citing *Miller v. Dothan*, 117 F.Supp.2d 1247 (M.D. Ala. 2000), Plaintiff argues that his attorneys are entitled to the time spent on the sexual harassment claim even though he was not successful on that claim. *Id.* at 3; *Miller*, 117 F.Supp.2d at 1263. In support of this argument, Plaintiff states that "the retaliation case was a direct result of actions taken against Plaintiff after complaining about sexual harassment and supporting a colleague's sexual harassment complaint." *Id.* at 4. Plaintiff states that Defendant's Opposition is replete with "misleading and false assertions." Doc. No. 107 at 6. Finally, Plaintiff argues the hourly rate of

Allen should not be reduced to $234.00 per hour when Finnigan testified that a reasonable hourly rate ranges from $250.00 to $275.00. *Id.*

On March 3, 2008, Defendant filed its Sur-Reply. Doc. No. 109. Initially, Defendant's counsel states that he does not recall Allen stating he would divide the hours worked among the original five plaintiffs. *Id.* at 2. To the contrary, Defendant states that the timesheets presented by Allen reflect otherwise:

> In fact, Mr. Allen's timesheets reflect that the City's suggested division among the five (5) plaintiffs is amply justified. For example, Mr. Allen seeks to recover attorney's fees for a total of 6.0 hours for reviewing 'over 900 documents' from the City on February 20 and 21, 2006. Doc. No. 93-2. Despite the fact that the City produced virtually the same documents for each of the five (5) plaintiffs, Mr. Allen seeks the same amount of hours for the same dates in the cases of [Matthew Floeter and Shawn Hayden]. Assuming that Mr. Allen would have also submitted the same amount of hours for the same dates in the cases of [Alex Faberlle and Anthony Moreschi] if he had the opportunity to do so, Mr. Allen is in essence claiming that he is entitled to attorney's fees for thirty (300) [sic] hours to review what amounted to one (1) set of discovery documents for two (2) days.

Doc. No. 109 at 2, n. 1. Defendant ultimately relies on arguments previously presented in its Opposition. *Id.* at 2-3. The Motions are now before the Court.

## II. THE LAW

### A. The Prevailing Party

The United States Congress has determined that a court, in its discretion, may award reasonable attorneys' fees, including expert fees, under Title VII and under Section 1988 to a prevailing party as part of its costs. *See* 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 1988(b); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416, 421 - 22 (1978). Entitlement to attorneys' fees by a prevailing party under Title VII is governed by the United States Code, which provides:

> In any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k). Similarly, Section 1988(b) provides in relevant part:

> In any action or proceeding to enforce . . . [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party . . ., a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b). Congress specifically drew the language of Section 1988(b) from preexisting fee provisions like those in Title VII (i.e., Section 2000e-5(k)). Congress intended that the standards for awarding fees under Section 1988 be the same as those under the fee provisions of the 1964 Civil Rights Act. Thus, courts interpret Section 2000e-5(k) and Section 1988(b) in tandem when addressing the propriety of awarding attorney fees to a prevailing party in a civil rights case.

The attorney's fee statutory provisions, however, are not self-executing. The statutes do not inform the judge as to what factors are relevant to the exercise of his discretion or as to what standards to apply. Given the numerous ways in which litigation can come to an ultimate conclusion, the statutes also do not provide the judge with guidance about when a party should be considered a "prevailing party." Congress left these issues for judicial interpretation.

    1.    <u>When Does a Civil Rights Party "Prevail"?</u>

Congress has employed the legal term of art "prevailing party" in numerous statutes authorizing awards of attorneys' fees. *See*, *e.g.*, 42 U.S.C. § 3616(c)(2); ADA, 42 U.S.C. § 12205; Title VII, 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 1988(b). On May 29, 2001, the Supreme Court defined a "prevailing party" for purposes of a fee-shifting statute as a "party in whose

favor a judgment is rendered, regardless of the damages award." *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001).[5] To prevail, a party must be awarded some relief by a court. *Id.* (emphasis added). This may take the form of a judgment on the merits or a court-ordered consent degree. *Id.* Both create the "material alteration of the legal relationship of the parties" which is necessary to a fee award. *Id.*

A party need not succeed on all issues in order to be deemed a "prevailing party." It is only necessary to "establish his entitlement to some relief on the merits of his claims in the trial court or on an appeal." *Id.* at 604. As explained by the Eleventh Circuit:

> To be a prevailing party [a] party need not prevail on all issues to justify a full award of costs, however. Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of rule 54(d) . . . A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims . . . 10 Wright & Miller, supra, § 2667, p. 129-130. Cases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced.

*Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995) (*quoting United States v. Mitchell*, 580 F.2d 789, 793-94 (5th Cir. 1978) (citations omitted)). Thus, the outer boundary of the term "prevailing party" is that a party must receive at least some relief on the merits of a claim before being considered a "prevailing party." *See Hewitt v. Helms*, 482 U.S. 755, 759 - 60 (1987).

    2.  <u>Standard Applicable to Prevailing Civil Rights Plaintiffs</u>

Neither Section 1988(b) nor Section 2000e-5 distinguish between prevailing plaintiffs and prevailing defendants. However, the Supreme Court has developed two distinct standards – one for prevailing civil rights plaintiffs and another for prevailing civil rights defendants.

---

[5] The *Buckhannon* Court's definition of a "prevailing party" was specifically written to apply under the FHAA, 42 U.S.C. § 3613 (c)(2) and ADA, 42 U.S.C. § 12205. The Supreme Court, however, noted in dicta that the "prevailing party" provisions in certain other fee-shifting statutes should be interpreted consistently, and listed 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988. *Buckhannon*, 532 U.S. at 603, n.4.

Relying on Congress's intent to cast civil rights plaintiffs in the role of private attorneys general, and on the fact that attorney's fee awards to prevailing plaintiffs are necessarily awarded against violators of federal law, the Supreme Court has held that a prevailing civil rights plaintiff should ordinarily recover his attorneys' fees unless special circumstances would render such an award unjust. *Christiansburg Garment Co.*, 434 U.S. at 416 - 18. Thus, to qualify as a prevailing party a party must obtain some relief, but not all originally requested, and a prevailing party should ordinarily recover his or her fees unless exceptional circumstances would make such an award unjust.

### B. The Amount of an Attorneys' Fee Award

Historically, the federal courts have analyzed demands for attorneys' fees pursuant to *Johnson*, 488 F.2d 714. Johnson set forth twelve factors to be considered in calculating a fee award.[6] The United States Court of Appeals for the Eleventh Circuit has consistently refined calculation of awards of attorneys' fees to comport with decisions of the United States Supreme Court. *Norman*, 836 F.2d at 1299. *Norman* adopted the lodestar approach for calculating attorneys' fees. The lodestar approach presumptively incorporates the twelve factors adopted in *Johnson*, 488 F.2d 714. *Norman*, 836 F.2d at 1298-99. The Eleventh Circuit applies the lodestar approach of *Norman* in determining a reasonable attorney's fee. *See Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 772 (11th Cir. 1991); *see also Burlington v. Dague*, 505 U.S. 557, 562 (1992). Simply stated, the lodestar formula is the product of the number of reasonable hours expended and the reasonable hourly rate. *Burlington*, 505 U.S. at

---

[6] Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

559-60 (*citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

The lodestar approach also governs the attorneys' fees analysis under fee-shifting statutes. *Burlington*, 505 U.S. at 561-62 (lodestar figure has become the guiding light of our fee-shifting jurisprudence). This Court therefore applies the *Norman* lodestar approach in determining the amount of fees to be awarded. Throughout the calculation of the lodestar, the Court remains cognizant that it is itself an expert on the question of attorneys' fees, and may consider the request in light of its own knowledge and experience with or without the aid of witnesses as to value of hours dedicated to litigation. *Loranger*, 10 F.3d at 781; *Norman*, 836 F.2d at 1303.

          1.        <u>Reasonable Hourly Rate</u>

The Court must first determine the reasonable hourly rate. *Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir. 1996); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman*, 836 F.2d at 1299. The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services provided by lawyers of reasonably comparable skills, experience, and reputation. *Norman*, 836 F.2d at 1299. The party seeking attorneys' fees bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates," which normally requires "more than the affidavit of the attorney performing the work." *Loranger*, 10 F.3d at 781 (*citing Norman*, 836 F.2d at 1299). The court may consider direct evidence of rates for similar services or opinion evidence about rates. *Norman*, 836 F.2d at 1299.

---

attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717 - 9.

The Eleventh Circuit looks to skill as the ultimate determinate of compensation level because experience and reputation are a mirror image of skill. *Id.* at 1300. Skill is evidenced by an attorney's initial case assessment, continuing negotiation and settlement attempts, persuasiveness, and other fundamental aspects of organization and efficiency. *Id.* at 1300 - 1301. Organization means that counsel plans effective discovery devices and does not use them randomly or for the mere purpose of going through established routines. Efficiency means doing exactly what needs to be done in a minimum time. *Id.* at 1301. Legal skill, therefore, correlates to a knowledge of both trial practice and substantive law. *Norman*, 836 F.2d at 1301. Although an attorney who must familiarize himself or herself with either aspect of practice may prove exemplary as an advocate, he or she does not have a right to claim comparable skill to attorneys whose first actions are directed at the finer points of the case. *Id.* Proficiency should yield efficiency, and the district court has ample discretion to discount the import of counsel's expertise. *Varner v. Century Finance Company, Inc.*, 738 F.2d 1143, 1149 (11th Cir. 1984). No two attorneys possess the same skill; therefore, the Court must look to the range provided by the evidence, and interpolate a reasonable market rate. *Norman*, 836 F.2d at 1300. In summary, the Court determines a reasonable rate by assessing the range of fees established in the marketplace, as modified by reference to an individual attorney's skill. *Id.* at 1301; *e.g., Duckworth*, 97 F.3d at 1396.

2. <u>Reasonable Hours Expended</u>

The second step in determining the lodestar is to assess the reasonable number of hours expended in the litigation. *Norman*, 836 F.2d at 1302. The fee applicant bears the burden of documenting the appropriate number of hours. *Id.* at 1303 (*citing Hensley*, 461 U.S. at 437;

*United States v. Blue Cross and Blue Shield of Florida, Inc.*, 882 F. Supp. 166, 170 (M.D. Fla. 1995)). Generalized statements concerning reasonableness are of little or no assistance to the Court, instead proof of the hours dedicated to litigation and any corresponding objections must be made with sufficient specificity. *Duckworth*, 97 F.3d at 1397 - 98; *Norman*, 836 F.2d at 1301. Inquiry into the reasonable number of hours focuses on the exercise of "billing judgment" — exclusion of those hours not reasonably billable to a client irrespective of counsel's skill, therefore the Court must deduct for redundant hours. *Id.* at 1301-02 (*citing Hensley*, 461 at 434).[7]

### III.   APPLICATION

Pursuant to the case law addressed above, Plaintiff is the prevailing party as to the retaliation claim and should be awarded attorneys' fees and costs. *Christiansburg Garment Co.*, 434 U.S. at 416 - 18. Plaintiff did not prevail on the sexual harassment count. The court in *Hensley* reasoned:

> And even where two claims apparently share no "common core of facts" or related legal concepts, *see ibid*, the actual work performed by lawyers to develop the facts of both claims may be closely intertwined. For instance, in taking a deposition of a state official, plaintiff's counsel may find it necessary to cover a range of territory that includes both the successful and the unsuccessful claims. It is sometimes virtually impossible to determine how much time was devoted to one category or the other, and the incremental time required to pursue both claims rather than just one is likely to be small.

*Hensley*, 461 U.S. at 448. Thus, a court is not obligated to discount the fees incurred while prosecuting the sexual harassment claim as long as the two claims arose from the same operative facts. However, the Court in *Avila* stated the following:

---

[7] A court must not consider an attorney's skill at this stage as this would constitute a double penalty – the rate would first be decreased and the hours would then be lowered. *Norman*, 836 F.2d at 1301.

14

> We agree that, under the law of this circuit, the two claims may be regarded as 'related' for purposes of determining the attorney fees award. However, as we suggested in *Popham*, a district court calculating a fee award may disallow fees for an unsuccessful claim even though the unsuccessful and the successful claims are related, if the plaintiff obtained only *limited success*.

*Avila*, 849 F.2d at 514 (emphasis added, internal citations and quotations omitted). Furthermore, the Supreme Court in *Hensley* maintained that "where the plaintiff achieved only limited success, the court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 423. It appears that the retaliation claim arose from the same or at least sufficiently related operative facts as the sexual harassment claim. According to the Plaintiff, the retaliation occurred immediately following his report to upper management of the alleged improper conduct. However, considering the limited award obtained in this case, the Court is not obligated to include the fees incurred in pursuing the sexual harassment claim.

Allen purportedly worked 193.0 hours solely on the retaliation claim. *See* Doc. No. 93 at 6. LaFay maintains that he performed 167.3 hours solely on the retaliation claim. Doc. No. 95 at 5. Defendant argues that Plaintiff's attorneys' fees should be reduced by fifty percent, reasoning that "discovery revealed that most of Plaintiff's allegations and alleged damages were tied to his sexual harassment claim." Doc. No. 99 at 6-7, n. 3. Given the limited success obtained by Plaintiff, the Court recommends that Allen's and LaFay's hours expended be reduced by fifty percent.

In Allen's and LaFay's affidavits, the attorneys attest that a reasonable hourly rate in the Central Florida area for partners at law firms in Title VII cases is between $300.00 and $375.00, and their respective rate is $350.00. Doc. No. 93-3; Doc. No. 95-5. Each of the attorneys also

15

had fellow colleagues attest to the reasonableness of their proscribed hourly rate and the reasonableness of the hours performed. *See* Doc No. 93-3; Doc. No. 95-4. To the contrary, Finnigan testified that the rates sought by Allan and LaFay are not reasonable. Doc. No. 99-2 at 4. Finnigan states further that a reasonable rate for Allen and LaFay is between $250.00 and $275.00. *Id.* at 5.

In his affidavit, Allen states that he has litigated civil rights cases for approximately thirteen (13) years. Doc. No. 93-3. LaFay states that he has been a trial attorney for twenty-two years (22), but he does not specify his experience in civil rights cases. Doc. No. 95-5. LaFay states he has been a partner at the law firm of Najame, LaFay, Jancha, Vara, Barker & Joshi, P.A. since 2002. *Id.* Finnigan states in his affidavit that he has been a member of the Florida bar since 1993, and he specializes in employment and labor law. Doc. No. 99-2, ¶ 1. The Court finds it necessary to reduce Allen's hourly rate to a rate of $325.00 per hour and LaFay's hourly rate to a rate of $300.00.[8]

The next issue the Court will address is whether some of the hours presented for consideration need to be reduced to twenty or twenty-five percent due to the Companion Cases. Plaintiff asserts in the Reply that opposing counsel was informed the hours would be appropriately allocated as to time spent with each individual plaintiff. Accordingly, Plaintiff states that the time presented in the Motions is adequately apportioned to the time spent representing the Plaintiff. The Court has reviewed the respective attorneys' timesheets. Doc.

---

[8]In making this determination, the Court was guided by previous Middle District decisions. *See, e.g., Salvador Ochoa, Filiberto Ricardo, Miriam Medina v. Alie Brothers, Inc., d/b/a Fabri-kleen Textile Services, Rayman Alie*, Case No. 6:06-cv-609-Orl-DAB; and *Marcia E. Johnson v. Corinthian Colleges, Inc.*, Case No. 6:05-cv-1917-Orl-22KRS. In each of these cases, the respective Courts awarded fees at a lower hourly rate than the rate requested by Allen and Lafay. *Id.* In Case No. 6:06-cv-609-DAB, the attorneys were awarded fees with hourly rates of $250 and $300. Doc. No. 59. In Case No. 6:05-cv-1917-22KRS, the attorney's hourly rate was decreased to a rate of $300. Doc. No. 52.

No. 93-2; Doc. No. 95-2. Hayden's time records make clear he prorated the respective time spent in each of the Companion Cases. Doc. No. 95-2. However, Allen's entries do not indicate that the time spent on the Companion Cases was prorated, and a few of the entries in Allen's time records make clear that he failed to do so. Doc. No. 93-2.

Most noteworthy in Allen's time records are the amount of hours spent in each of the three noted cases on January 10, 2007. According to his submitted time, on January 10, 2007, Allen worked 27.5 hours (11 hours in *Easterling*, 11 hours in *Hayden*, and 5.5 hours in *Floeter*). *See* Doc. No. 93-2, *Easterling*; Doc. No. 108-2, *Hayden*; Doc. No. 227-3, *Floeter*. Here, it is apparent, that Allen did not prorate his time considering the impossible amount of hours allegedly worked in a single day. Allen should not be given attorney's fees for January 10, 2007.

Allen billed for a total of 5.1 hours in the present case that should only be accounted for in *Floeter*. The entries involve the spoliation of evidence asserted by the City in *Floeter*. The spoliation of evidence was not alleged in the present case. Accordingly, those 5.1 hours should be deducted. Also, Allen billed for a total of 4.7 hours in the present case and in *Hayden* and *Floeter* in reviewing and responding to the City's Motion in Limine. The City's Motion in Limine consists of twelve pages and cites fifteen cases. Plaintiff's response is eight pages and is almost identical in each of the Companion Cases. Accordingly, it does not appear that Allen prorated his time in this instance, and the 4.7 hours should be reduced to twenty percent (20%), totaling .94. The total amount of hours that the Court has determined should be deducted thus far as to lack of proration or unperformed work is 18.9 hours.[9] However, reviewing the record,

---

[9] One of the hours performed for the Motion in Limine was performed on January 10, 2007 and has already been discounted.

17

it appears that Allen did not prorate his hours amongst the Companion Cases in other instances. Thus, the Court recommends that an additional 20 hours be deducted from Allen's claimed hours, for a total of 38.9 hours.

Defendant has also requested that the fees sought be reduced by thirty percent (30%) for overlap between Allen and LaFay. The present case was pending for two and one-half (2 ½) years and was in trial for three (3) days. The Court did not observe any substantial overlap between Allen and LaFay. Accordingly, the Court finds the hours performed by each attorney to be reasonable and does not find that a thirty-percent (30%) deduction in their respective requests necessary.

Finally, the Court does not find that the attorneys are entitled to either an enhancement fee or a multiplier. The Eleventh Circuit does not permit multipliers under Title VII. *Reddick*, 954 So.2d at 727. The Court does not find the results to be exceptional warranting the application of an enhancement fee. *See Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988).

It is therefore **RECOMMENDED** that the Motions [Doc. Nos. 93, 95] be **GRANTED in part** and **DENIED in part**. Frank T Allen, Esq. and The Allen Firm, P.A. should be awarded $21,970.00 in attorneys' fees [67.6 x $325.00].[10] Michael LaFay, Esq. and the law firm of Nejame, LaFay, Jancha, Vara, Barker & Joshi, P.A. should be awarded $28,095.00 in attorneys' fees [93.65 x $300.00].[11]

---

[10] The Court came to this calculation as follows:  213.2 / 2 = 106.5 – 38.9 = 67.6 hours performed.
[11] The Court came to this calculation as follows:  187.3 / 2 = 93.65 hours performed.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 11, 2008.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable Ann C. Conway
Counsel of Record
Unrepresented Party